IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


IN RE: CHARLES RAY FRANCIS; and
RHONDA KAY FRANCIS, Debtors
NO. 6:07-BK-73901
NO. 6:09-AP-7119

GMAC MORTGAGE, LLC                                                                PLAINTIFF


VS.                               CASE NO. 6:12-CV-06104


SUMMIT BANK, N.A.; RHONDA KAY FRANCIS;
CHARLES RAY FRANCIS; and FARMERS BANK
& TRUST f/k/a SOUTHERN STATE BANK                                         DEFENDANTS


## MEMORANDUM OPINION

Before the Court are the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law. (ECF No. 1). Plaintiff has objected (ECF No. 3), and Defendant Summit Bank has responded to those objections. (ECF No. 5). The matter is ripe for the Court's consideration. After reviewing the bankruptcy court's findings *de novo*, 28 U.S.C. § 157(c)(1), the Court agrees with those findings and, for the reasons stated in this opinion, will enter judgment against Plaintiff on its complaint in this adversary proceeding.

### BACKGROUND

The Francises filed for chapter 7 bankruptcy in late 2007. The present dispute is over the priority of various liens on the Francises' home and property. Because the lien dispute is related to a bankruptcy proceeding, but is not a core proceeding, *see Stern v. Marshall*, –––U.S.–––, 131 S. Ct. 2594, 2603–04 (2011), the bankruptcy court presided over the case through the post-trial

motions and submitted proposed findings of fact and conclusions of law for this Court to consider before entering judgment. 28 U.S.C. § 157(c)(1). Those findings are as follows.

### I.     Factual history

In January 2005, Francis Construction Company transferred 22.06 acres in Hot Spring County to the Francises personally. Soon after that, the Francises mortgaged the property to Southern State Bank, the predecessor of Defendant Farmers Bank & Trust. On October 14, 2005, the Francises refinanced their Southern State Bank debt with ditech.com, a subsidiary of Plaintiff GMAC.

That October 2005 refinancing caused the problem giving rise to this case. Somehow, GMAC's mortgage described the wrong parcel of land. The parties intended the mortgage to describe—and thus to cover—the Francises' 22.06 acres, but instead the mortgage described an 11.16-acre neighboring parcel. That error left GMAC essentially unprotected.

Mr. Francis says that he raised the acreage discrepancy at closing, but that the notary claimed not to know why the mortgage described only half the intended acreage. When he discovered that the mortgage's description actually described his neighbor's property, Mr. Francis says he tried to get GMAC to correct the problem.[1] When he heard nothing back, Mr. Francis assumed GMAC was satisfied with an 11-acre collateral rather than a 22-acre one, so he offered to, and later did, re-plat the single 22.06-acre tract into two parcels: one at 10.55 acres including the Francises' house (Parcel A); and another at 11.51 acres (Parcel B). Francis faxed GMAC the survey and the legal description of Parcel A, and, at GMAC's request, had the tax assessor issue new parcel cards reflecting the division. Despite this, GMAC failed to correct its mortgage.

---

[1] GMAC reportedly has no record of Mr. Francis's communications, but the bankruptcy court credited Mr. Francis's testimony. "[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed. R. Bankr. P. 8013.

In February 2006 the Francises mortgaged Parcel A to Summit Bank to refinance some old loans. Francis and Don Tackett, Summit's representative, agree that Francis told Summit about the misdescriptive GMAC mortgage. Based on that knowledge, Summit assumed GMAC had a superior mortgage in Parcel A, but Summit was content to take a second mortgage behind GMAC on the land. When Summit and the Francises modified their mortgage in May 2007, however, the paperwork claimed a first mortgage for Summit, rather than a second one. Then, in October 2007, the Francises mortgaged Parcel A to Southern State Bank. Francis told Southern State too about the GMAC mix-up, and that he assumed GMAC either did not believe there was a problem or did not care if there were. Southern State therefore took its mortgage as a second mortgage behind Summit, figuring that GMAC was out of the picture.

Parcel B was mortgaged to Elk Horn Bank in May 2007, and then to Southern State Bank in November 2007. The Southern State mortgage was to refinance the Elk Horn Bank loan, so Southern State took Elk Horn Bank's place as first-mortgage-holder to Parcel B.

## II.     Procedural history

GMAC filed this adversary proceeding in July 2009 seeking to determine the priority of the mortgages on the Francises' land. It claims the priority mortgage under two theories: equitable subrogation and mortgage reformation. Summit and Farmers (Southern State's successor) object to GMAC's arguments. Summit further raises laches as an affirmative defense to GMAC's mortgage-reformation argument.

The bankruptcy court held a one-day trial on these issues on October 20, 2011 and, after considering the parties' post-trial briefs, presented this Court with its proposed findings of fact and conclusions of law. (ECF No. 1). Based on the facts above, the bankruptcy court came to the following legal conclusions: (1) equitable subrogation is unavailable to GMAC because two

elements were not proved—an intervening event making the new security not a first lien; and a lack of culpable neglect on GMAC's part; and (2) GMAC's mortgage-reformation request is barred by laches. The bankruptcy court also found that, despite GMAC's urgings to the contrary, Summit and Southern State were protected bona-fide creditors.

GMAC objects to the bankruptcy court's findings, arguing that: (1) the intervening-event element that the court applied is not an element of equitable subrogation; (2) GMAC's conduct after the original October 2005 closing is immaterial to whether GMAC was culpably neglectful; (3) Summit and Southern State had actual knowledge of GMAC's lien interest, so they would not be prejudiced by GMAC being equitably subrogated to Southern State's original October 2005 priority; (4) laches does not apply, because reforming GMAC's mortgage would not prejudice Summit or Southern State and because GMAC filed its adversary proceeding within the statute of limitations for actions on notes.

The Court will address GMAC's objections in turn.

## DISCUSSION

### I.    Equitable subrogation

The first two of GMAC's objections concern equitable subrogation. Often a new creditor will pay off another party's debt in a refinancing deal with the intention of stepping into the old creditor's shoes. By stepping into the old creditor's shoes, the new creditor hopes to maintain the priority of the old creditor's security interest, usually a mortgage. Sometimes, however, an intervening event, such as a third party's judgment lien being filed on the underlying security, causes the new creditor's interest to fall behind another interest. When that happens through no fault of the new creditor (for example, when the new creditor hires a title company that negligently fails to spot the intervening encumbrance), courts apply equitable subrogation to

effectuate the parties intent and put the new creditor in the old creditor's shoes. *Newberry v. Scruggs*, 336 Ark. 570, 577, 986 S.W.2d 853, 857 (Ark. 1999) (citing and quoting *S. Cotton Oil Co. v. Napoleon Hill Cotton Co.*, 108 Ark. 555, 158 S.W. 1082, 1083–84 (Ark. 1913)).

The purpose underlying equitable subrogation is, like any equitable rule, to do justice among the parties "without regard to form." *United States v. Gregory-Beaumont Equip. Co.*, 243 F.2d 591, 592 (8th Cir. 1957). The elements, as the bankruptcy court stated them, are: (1) the party seeking subrogation paid off an encumbrance with the understanding that it would be secured by a first lien on the property; (2) the new security was, for any reason, not in fact a first lien; and (3) the party seeking subrogation is not chargeable with culpable and inexcusable neglect. (ECF No. 1, at 5) (citing *Newberry*, 986 S.W.2d at 857–58 (internal citations omitted)). GMAC contends that the bankruptcy court wrongly applied elements two and three.

  **a.**  **Whether an "intervening event" is required**

The bankruptcy court found an unstated requirement in element two: that the first lien fail, not just for any reason, but specifically because of an "intervening event." (ECF No. 1, at 5–6). In other words, the failure to be a first lien must be based on an *intervening* filing rather than an *invalid* filing. The court based that conclusion on the fact that every equitable-subrogation case it could find occurred where the new creditor's priority was thwarted by an intervening record filing. Because GMAC's priority was thwarted not by an intervening filing, but rather by its own non-filing, the bankruptcy court found that GMAC failed to prove the second element. GMAC counters that such a requirement is found nowhere in the law, and that the reason for the failure needn't be an intervening filing, but instead may be "for any reason."

The Court agrees with GMAC. First, the equitable roots of equitable subrogation keep form from standing in the way of justice. *Gregory-Beaumont Equip Co.*, 243 F.2d at 592.

Experience alone does not create an element where justice sees no distinction. Second, the requirement that the failed security not be "a first lien" does not logically demand that it must therefore be a second, third, or fourth lien as opposed to no lien at all. One old Arkansas case quotes approvingly an even older New Jersey case stating that equitable subrogation arises "where, through fraud or mistake, the new security turns out to be defective…." *Cooper v. Home Owners' Loan Corp.*, 197 Ark. 839, 126 S.W.2d 112, 115 (Ark. 1939) (quoting *Home Owners' Loan Corp. v. Collins*, 184 A. 621, 622 (N.J. 1936)). Thus, the defect's existence, rather than its nature, is what counts.

Finally, taking a step back from technicalities, the point of equitable subrogation is simply that "equity, to save an injustice being done[,] will subrogate the one discharging the mortgage or lien to the rights the mortgagee or lien holder would have had if he, the payor, had not discharged the mortgage or lien." *Spurlock v. Spurlock*, 80 Ark. 37, 96 S.W. 753, 754 (Ark. 1906). The doctrine thus cares not for technical hang-ups; it simply seeks to put an unsecured or undersecured creditor in the place of the creditor he and the debtor intended him to replace. The Court is thus not able to say with confidence that GMAC is required to prove that an intervening event, rather than a non-event, caused its security to be defective.

### b.     Whether neglect may arise from events after closing

The bankruptcy court found that GMAC was culpably neglectful in failing to heed the Francises' notices that the mortgage described the wrong property. GMAC does not object to the bankruptcy court's finding that it was neglectful. Rather, it argues that the bankruptcy court wrongly looked at events that happened *after* the refinancing deal was closed. GMAC argues that "any evidence of conduct after the loan closing is immaterial to the application of equitable subrogation." (ECF No. 4, at 4). The Court is not persuaded by GMAC's objection.

6

Here, unlike in element two, there is a material difference between intervening and invalid filings. GMAC is right that ordinarily, events beyond the loan closing are irrelevant to whether the party seeking subrogation was neglectful. That is because, ordinarily, the party seeking subrogation has lost its lien priority based on an event—an intervening filing—that happened *before* closing, and therefore the priority is set at closing. But GMAC here commits the same error it accuses the bankruptcy court of committing on element two: taking what *ordinarily* happens to establish what *must* happen in this case.

Events after GMAC's closing are relevant because, unlike in the ordinary case, GMAC's priority was not indelibly subverted at closing—GMAC had, by its own admission, over four months to correct its mortgage and protect its first-lien status. GMAC's failure to heed the Francises' multiple warnings was culpable neglect. If it had heeded the warnings, its priority could have been established as the parties intended. Therefore, GMAC's negligence after closing disentitles it to equitable subrogation.

## II.     Notice

The bankruptcy court rejected GMAC's argument that equitable subrogation should apply notwithstanding GMAC's neglect because Summit and Southern State had notice of GMAC's interest and therefore were not bona fide creditors. The bankruptcy court found that even if Summit and Southern State had "undisputed actual notice" of GMAC's interest, they would still merely be charged with what knowledge "they would have thus obtained had they made [an] inquiry" into the record. (ECF No. 1, at 8) (quoting *Neas v. Whitener-London Realty Co.*, 178 S.W. 390, 394 (Ark. 1915)). Because an inquiry into the lien record for the Francises' land would have revealed no prior liens, the bankruptcy court reasoned, Summit and Southern State could have had no knowledge of GMAC's prior interest. GMAC argues that the bankruptcy

7

court conflated actual notice and constructive notice, and that Summit and Southern State in fact had actual notice. GMAC is right, but its notice argument fails nevertheless.

The law is unfortunately unclear in distinguishing actual versus constructive notice. The difference is this: a party may truly *have* actual notice, or it may be *deemed* to have actual notice. The "deemed" variety is commonly known as constructive notice. *See Killam v. Tex. Oil & Gas Corp.*, 303 Ark. 547, 553, 789 S.W.2d 419, 422 (Ark. 1990) (talking of "constructive notice, meaning they were aware of enough facts that they were obligated to pursue and inquire into the possibility of [prior interests]."). It is the "deemed" variety that involves an obligation to inquire, and charges one with the knowledge that an inquiry would have revealed. True actual notice does not entail any inquiry, because an inquiry is unnecessary when one already knows something.

Whatever notice exists in this case arises from the parties' admission that the Francises told both Summit and Southern State about GMAC's misdescriptive mortgage. Summit and Southern State, then, *had* actual knowledge; they did not need to be *deemed* to have it. Because they had actual knowledge, the Court need not consider what an inquiry would have revealed to them.[2]

GMAC's notice argument, however, still fails. Even assuming Summit and Southern State had knowledge of GMAC's outstanding interest, that fact at most makes the equities equal, given GMAC's own culpable neglect in not securing its interest. "A court of equity will not intervene, 'where there are equal equities or where there are no equities.'" *Heifetz Metal Crafts, Inc. v. Peter Kiewit Sons' Co.*, 264 F.2d 435, 439 (8th Cir. 1959) (quoting *Pac. Royalty Co. v.*

---

[2] In this case, conflating actual and constructive notice creates the odd result of Summit and Southern State being *deemed* to have less knowledge than they actually *did* have. This result is at odds with the purpose of the recording statute, which is to protect innocent purchasers. Moreover, Summit and Southern State could not discharge their obligation to inquire about prior interests by searching records they knew would not contain the prior interests for which they searched. In other words, it would not be enough for them to look where they knew they would not find anything.

*Williams*, 227 F.2d 49, 58 (10th Cir. 1955)). "The equities being equal," then, "the law must prevail." *Judson v. Corcoran*, 58 U.S. 612, 614 (1854).[3] GMAC's own culpable neglect therefore makes the equitable-subrogation remedy unavailable even if Summit and Southern Statute had actual notice.

### III.   Laches

In its complaint, GMAC asks to have its mortgage reformed according to the parties' intent. The bankruptcy court found that, even if GMAC showed a mutual mistake warranting reformation, Summit's affirmative defense of laches applies to preclude reformation. GMAC argues that laches is inapplicable because Summit and Southern State were not prejudiced by GMAC's delay.[4]

Laches is an equitable defense that arises when the relief-seeking party unreasonably delays filing its claim and the circumstances make it therefore inequitable for that party to obtain relief. *Royal Oaks Vista, L.L.C. v. Maddox*, 372 Ark. 119, 123–24, 271 S.W.3d 479, 483 (Ark.

---

[3] On top of the equities being equal, there remain the questions whether (1) GMAC's mortgage was void for misdescription; and (2) even if Summit and Southern State had actual notice, such notice could endure for years even while GMAC failed to correct its misdescriptive mortgage.

[4] GMAC also argues that, unless laches is supported by an intervening equity, a period of inaction shorter than the statute-of-limitations period will not support the application of the doctrine, citing *Earle Improvement Co. v. Charfield*, 81 Ark. 296, 302, 99 S.W. 84, 85 (1907). Because the bankruptcy court failed to find an intervening equity in this case, GMAC argues, laches does not apply. Therefore, according to GMAC, "[b]y analogy to the statute of limitations, laches should not bar any action for reformation…." (ECF No. 4, at 10).

This argument is not really different from GMAC's argument that inaction alone is not enough for laches to apply. The cases GMAC cites for its statute-of-limitations argument merely state—albeit in dated language, in the case of *Earle Improvement Co.*—that laches does not apply when there is no prejudice. In other words, when prejudice is not shown, laches does not apply, and so the statute of limitations *does* apply. *See Boyd v. Meador*, 10 Ark. App. 5, 12, 660 S.W.2d 943, 947 (Ark. Ct. App. 1983) ("Laches in legal significance is not mere delay, but delay that works a disadvantage to another."). The "intervening equity" mentioned in *Earle Improvement Co.* and in *Boyd*, then, is merely another way of referring to the requirement of prejudice.

GMAC also disputes the bankruptcy court's finding that it demonstrated inaction, but GMAC does not say precisely what theory this dispute is pointed at. However, the Court notes that contrary to GMAC's view, 136 days, even subtracting the days before Mr. Francis told GMAC about the misdescription, is not an "extremely narrow window within which it could have corrected the parties' mutual mistake." (ECF No. 4, at 10). Even if Mr. Francis did not mention the error until a month after signing, that still left GMAC with around three months to correct the mistake. Moreover, GMAC did not merely have until Summit's February 2006 mortgage deal to fix its mistake; Summit's intention to take a *first* mortgage was not apparent until May 2007, when Summit modified the Francises' mortgage. GMAC therefore had well over a year to fix its mistake.

2008) (quoting *Summit Mall Co. v. Lemond*, 355 Ark. 190, 206, 132 S.W.3d 725, 735 (Ark. 2003)). The doctrine is "based on the assumption that the party to whom laches is imputed has knowledge of his rights and the opportunity to assert them, [and] that by reason of his delay some adverse party has good reason to believe those rights are worthless or have been abandoned…." *Cochran v. Bentley*, 369 Ark. 159, 170, 251 S.W.3d 253, 263 (Ark. 2007). A successful laches defense requires proving: (1) a detrimental change in position by the party asserting laches; and (2) unreasonable delay by the one opposing laches. *Royal Oaks Vista*, 372 Ark. at 123–24; 271 S.W.3d at 483.

### a. Detrimental change

The bankruptcy court appears not to have discussed whether Summit and Southern State detrimentally changed their positions in reliance on GMAC's failure to correct its mortgage; instead it focused mostly on GMAC's lack of action by itself. "Laches," however, "requires a demonstration of prejudice," *Id.* at 126; 271 S.W.3d at 484, which is another way of saying detrimental reliance. GMAC argues that Summit and Southern State would not be prejudiced by a mortgage reformation because they had notice of GMAC's claim to priority. The Court disagrees.

Summit, in its February 26, 2006 deal with the Francises, was the only creditor to expressly acknowledge its intent to take a mortgage second to GMAC. By May 21, 2007, however, when Summit and the Francises modified the mortgage, Summit's title work reflected a first mortgage. Southern State's mortgage on Parcel A did claim to be a second mortgage, but one in favor of Summit, not GMAC. Southern State's mortgage on Parcel B also claimed to be a first mortgage.

Summit could not have suffered any prejudice as of its February 26, 2006 deal, because it fully intended to take second to GMAC's mortgage interest. But by the time it modified the mortgage over a year later, in May 2007, and claimed a first mortgage, Summit had changed its position plausibly assuming that GMAC had abandoned its claim to priority. All the transactions following Summit's position as of May 2007 assumed that Summit had a first mortgage in Parcel A—that is why Southern State took a second mortgage to Summit on Parcel A, and a first mortgage on Parcel B.

Although the Francises told Summit and Southern State about GMAC's alleged interest, the two banks were not required to act contrary to the facts and ignore GMAC's obvious failure to assert its rights. Accordingly, the Court finds that Summit and Southern State have shown sufficient prejudicial reliance on GMAC's unreasonable delay for laches to apply.

## CONCLUSION

For the reasons above, the Court agrees with the bankruptcy court that GMAC is not entitled to a first or second mortgage on the Francises' 22 acres through either equitable subrogation or mortgage reformation. GMAC's culpable neglect precludes equitable subrogation. While Summit and Southern State likely had notice of GMAC's claimed prior interest, that merely makes the equities—or rather, the inequities—equal, and so the parties are left to the law. Finally, Summit and Southern State's prejudicial reliance on GMAC's unreasonable delay makes laches an appropriate bar to reforming GMAC's mortgage.

Accordingly, the Court **ADOPTS IN PART** the Bankruptcy Court's proposed findings of fact and conclusions of law. (ECF No. 1). The Court finds that GMAC's Amended Complaint, Case No. 6:09-AP-7119, ECF No. 36, (Bankr. W.D. Ark. Dec. 8, 2010), should be and hereby is **DISMISSED WITH PREJUDICE**. GMAC is not declared to have a first or second mortgage

on the property and residence at 19781 Hwy. 67, Malvern, Arkansas. A separate order consistent with this opinion will be filed today.

    IT IS SO ORDERED, this 28th day of February, 2013.

                                                             /s/ Susan O. Hickey  
                                                             Susan O. Hickey  
                                                             United States District Judge